IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NEYSA COLON,

Plaintiff,

v.

INFOTECH AEROSPACE SERVICES,
INC.; LUIS MERCADO; IVETZIA A.
AVILES; JEFFREY A. TRACY,

Defendants.

CIVIL NO.  10-2220 (FAB/CVR)

## REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Neysa Colón (hereafter "plaintiff Colón") filed the instant cause of action under the Equal Pay Act ("EPA"), 29 U.S.C. §206(d)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* for discrimination and/or retaliation and for attorney's fees under 42 U.S.C. §1988.  Plaintiff Colón also submitted claims under state Law No. 100 and Law No. 115 for discrimination and retaliation, in addition to state law tort for an alleged conspiracy and damages because of perceived employment discrimination.[1]

Plaintiff Colón submitted in the complaint that, as Human Resources Generalist with defendant Infotech Aerospace Services (hereafter "Infotech"), she was harassed and retaliated in employment for engaging in a protected activity under Title VII and the EPA. Plaintiff Colón was assigned and worked with problems related to compensation at the

---

[1]  29 P.R. Laws Ann. §146, *et seq.* and §194 *et seq.*; Article 1802, P.R. Civil Code, 31 P.R. Laws Ann. 5141.

defendant's Compensation and Benefits Division and notified defendants the employer's equal employment/affirmative action plan did not comply with the law and proposed a new equal employment plan for the company.  As a result and as alleged retaliation, plaintiff Colón was notified she was going to be in cross-training which plaintiff Colón considered a threat to her continued employment and a demotion when she was assigned as a Business Partner.  (Docket No. 1, p. 3).  While performing as a Business Partner, a female employee requested plaintiff Colón to conduct an evaluation of her salary on the belief there was a disparity between payment to male employees in a similar position.  The disparity was found, a report was made, and meetings were conducted.  When the complainant employee suffered a panic attack and reported to the State Insurance Fund (hereafter "SIF"), an investigator was assigned to interview witnesses, including plaintiff Colón.  During the interview with plaintiff Colón, the investigator in charge wanted to know all related information. The SIF investigator informed plaintiff Colón her participation in the investigation was protected by law.   The complaint submits that the SIF requested the salary evaluation performed by plaintiff Colón to be sent by fax on certain date, to which plaintiff Colón complied.  (*Id.*, p. 4).  Thereafter, plaintiff Colón was informed by defendants that same afternoon she was being suspended from work and could even result in her dismissal. (*Id.*, ¶4.17).  Plaintiff Colón was also questioned as to her relation with the complainant employee and intimidated as to possible consequences.  Plaintiff Colón was told to report back to work a few days after for  she was suspended with pay from June 16 through June 22, was asked to surrender her personal pen drive and access to her

computer, while information was erased regarding compensation electronic files.  Plaintiff Colón reported to the SIF and, after several months, because of apprehension and fear for her safety, plaintiff Colón felt she had to resign from her position with defendant Infotech. (*Id.*, p. 5).

A succinct examination of the Complaint shows plaintiff Colón has pleaded employment discrimination and/or retaliation by defendant Infotech upon being: (1) transferred or demoted from her position; (2) deprived of corporate training, meetings and conventions; (3) suspended from work for participating in an investigation; and (4) having resigned for feeling harassed and fearing for her safety.[2]

Defendants Infotech Aerospace Services (hereafter "Infotech"), Mr. Luis Mercado (hereafter "Mercado"), Ms. Ivetzia Avilés (hereafter "Avilés") and Mr. Jeffrey A. Tracy (hereafter "Tracy") filed a Motion for Summary Judgment which was referred to this Magistrate Judge for report and recommendation.  (Docket No. 69).  Plaintiff Colón filed her response in opposition (Docket No. 83).  Thereafter, defendants submitted a reply and plaintiff Colón a sur-reply, each with their respective additional statement of opposing facts. (Docket Nos. 98, 99 and 102).

Defendant Infotech's request for summary judgment submits there are uncontested issues of fact that plaintiff Colón was temporarily suspended, with pay, from her employment while an investigation was being conducted of plaintiff's breach of confidentiality; she was assigned to cross-training as were other similarly situated

---

[2]  Relevant summary of Complaint as it was made part of a prior report and recommendation.(Docket No. 38).

employees and as part of company policies to provide for a more flexible work force; no adverse employment actions (no demotion or salary decrease or benefits) resulted from the employer's actions; and plaintiff Colón resigned as an over-reaction to the valid employer's concern of an investigation.  These were among others, valid business reasons of the employer Infotech as to plaintiff Colón and there was an absence of any harassment, discrimination or retaliation for the employment actions.

Plaintiff Colón's opposition states defendants' allegations of no genuine disputed facts are not proper and states proposed explanations for the employment actions were but a pretext for discrimination and/or retaliation, to include: defendant's own admission of having taken disciplinary action against plaintiff Colón because of her participation in the SIF's investigation as to another employee; plaintiff being deprived of her duties while the alleged cross-training was in effect which no other employee had been deprived; defendants' claim that plaintiff Colón failed to produce timely work as to the proposed study of unequal pay of females by the company; plaintiff Colón was denied a performance bonus while having scored work evaluations that exceeded expectations; was denied attendance to conferences and meetings; suffered harassment upon being threatened for her participation in the SIF's investigation; had to endure being removed from the Company's premises; withdrawal of access to her computer and to any information in her pen drive and removal of her access badge while an alleged investigation was being conducted and she remained suspended from work after being apprised that she may be facing dismissal, among others.  Plaintiff Colón also avers she is protected by state law

against reprisals because of her participation in a judicial administrative or legislative proceeding.

After the reply and sur-replies were allowed, with similar and repetitious uncontested/contested issues, the summary disposition requested by defendants is now ripe for the Court's consideration.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Pursuant to the language of the applicable rule, as amended in 2010, the party bears the two-fold burden of showing that there is "no genuinely disputed." issues of fact. The party may also sow that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Vega-Rodríguez v.  Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997) (the standards for granting summary judgment remains unchanged under the 2010 amendments).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v.  Corporación Insular, 111 F.3d 184, 187 (1st Cir.  1997).  A fact is deemed "material" if it potentially could affect the outcome of the suit.  *Id*.  Moreover, there will only be a

"genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1ˢᵗ Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1ˢᵗ Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1ˢᵗ Cir. 1997).

### FINDINGS OF FACTS

### A. Defendant's Uncontested Facts.

Defendant Infotech's statement as to uncontested facts that would entitle summary adjudication of this cause of action is mainly geared as to defendant employer Infotech having valid business reasons for the actions taken as to plaintiff Colón and not on account of any discriminatory or retaliatory animus. As background information defendant Infotech submits that during her employment since April 30, 2007, Ms. Colón was a Human Resources Generalist with responsibilities dealing with benefits and compensation. She was

Neysa Colón v. Infotech Aerospace Services, Inc., et al
Civil No. 10-2220 (FAB/CVR)
Report and Recommendation
Page No. 7

assigned to work in an Affirmative Action Plan in 2007, which she did not timely nor completely submit.[3]   As to the areas plaintiff Colón attributed to employment discrimination and/or retaliation, defendants submit having valid business reasons for the actions taken, which merit summary judgment for defendants.

**1.     Cross-Training/Business Partner Assignment.**

In order to create a more flexible work force, ensure all functions could be performed and as a managerial prerogative,  employees of the Human Resources Department were ordered for cross-training, which Mercado had previously informed to Tracy.  Plaintiff Colón was informed of the cross-training rotation in January of 2009. (Deft's Uncontested ¶¶7-10; Exhibit 6, Mercado's depo., pp. 35-36; Exhibit 8, Tracy's depo., pp. 22-23; Exhibit 2,  Colón's depo., pp. 120-121).

Plaintiff Colón was assigned Business Partner responsibilities as part of the cross-training.  Another Human Department employee, Ms. Hermy Rosado, was assigned to develop in the area of Compensation.  Infotech saw this as an opportunity to develop a back-up for Colón who could carry out the duties associated within the area of Compensation and Benefits, which duties do not require any sort of certification. Four (4) Human Resources employees were rotated under the cross-training plan, to wit: Ms. Hermy Rosario from Business Partner to Compensation; plaintiff Colón from Compensation to

---

[3]  Mercado was the Human Resources Director for Infotech.  Tracy is identified as a high ranking officer in the Company and Avilés was a Human Resources high executive and one of plaintiff Colón's supervisors.  They were sued as defendants in their individual capacities together with the employer company Infotech, presumably for other causes of action and/or pendent state claims since there is no Title VII individual liability as to the defendants sued in their personal capacities.

Business Partner; Ms. Margarita Piñero from Hiring to Training; and Ms. Mayra García from Training to Hiring.  (Deft's Uncontested ¶12-15; Exhibit 4, Mercado's statement ¶17; Exhibit 6, Mercado's depo., pp. 52, 111; Exhibit 9, Ms. Hermy Rosario's statement ¶17).

This was not the first occasion plaintiff Colón participated in Business Partner rotation as a Human Resources Generalist for a similar plan had been implemented in January of 2008.  (Exhibit 2, Colón's depo., pp. 248-49; Exhibit 4, ¶18).  Two (2) other Human Resources Generalists were also assigned to Business Partner while plaintiff Colón participated in the cross-training, to wit; Ms. Brenda Ramírez and Ms. Jeanette Torres. Colón and other employees participated on more than one occasion in the rotation programs and these temporary rotations did not represent a demotion. (Deft's Uncontested ¶¶17-18; Exhibit 10, Aviles' depo., p. 95; Exhibit 4 ¶19; Exhibit 9,  Ms. Hermy Rosario's statement, ¶12).  Colón's salary and benefits were not reduced while in cross-training.  Her evaluation for the year 2008, discussed early in 2009, was favorable.  (Deft's Uncontested ¶¶19-20; Exhibit 4, Mercado's statement  ¶19; Exhibit 9, Ms. Hermy Rosario's statement ¶12; Exhibit 10, Avilés' depo., p. 95).

### 2.    Affirmative Action Plan/ Colón's Task.

Around January 2009, Colón showed to Mercado a draft of a document referred as Affirmative Action Plan.  Said plan was not in place when plaintiff Colón was scheduled to begin her cross-training in February 2009.  Mercado reviewed the document referred by Colón and found it incomplete, informing Colón the document appeared to be a draft and was not acceptable.  Mercado, not being an expert in the area of affirmative action,

Neysa Colón v. Infotech Aerospace Services, Inc., et al
Civil No. 10-2220 (FAB/CVR)
Report and Recommendation
Page No. 9

recommended to retain a consultant to evaluate and complete the Affirmative Action plan.
Ms. Janice Monge, a certified expert in the area of Affirmative Action, was retained to
evaluate and complete the process.  Monge was provided with a copy of Colón's draft and
expressed in July 2009 the document had numerous errors and deficiencies; was six (6)
months late, covering until June 30, 2008 but handed in January of 2009 and contained
entire sections no longer required by law.  Monge also indicated the proposed plan lacked
an adverse impact analysis, compensation analysis, was not supported by statistical analysis
and lacked foundation for the conclusions expressed.  Colón had also included supporting
documents within the formal document, mixed with Affirmative Action Plan for veterans
and the one for women, created too many groups of employees, meaning the plan would not
have appropriate conclusions. The conclusion of existing compensation discrimination did
not indicate what methodology was used, what information the conclusion was based on
and how Colón had reached that conclusion.  Monge prepared the Affirmative Action Plan
for 2009 and has been thereafter retained to prepare the yearly plan for the Company.
(Deft's Uncontested ¶¶21-34; Exhibit 6, Mercado's depo., pp. 12, 24-25, 26, 27; Exhibit 9,
Ms. Hermy Rosario's statement ¶¶14-15, 16-18; Exhibit 2, Colón's depo., pp. 125, 127;
Exhibit 13, Ms. Janice Monge's depo., pp. 7, 31, 40-41, 45, 51-52, 53-57, 66, 77-79).

   **3.    SIF's Interviews/ Colón's Participation.**

   Around March 2009, the Human Resources Department received a complaint from
Ms. Anayanssi Díaz, Specialist III in the Project Management Department, regarding pay
disparity between her and a male employee in her department.  Plaintiff Colón, being then

Business Partner in Díaz' department, was requested to participate in the investigation of Díaz' claim.  Plaintiff Colón was to prepare a table comparing the salary, experience, education and relevant information of Díaz and the male employee, who were identified by name in the comparison table.  Mr. Héctor Rodríguez, General Manager, instructed specifically that all information as to said salary evaluation was to be kept confidential and handled through Mercado, then Human Resources Manager.  Mercado personally informed plaintiff Colón as to the confidentiality of all information and any disclosure had to be authorized by him.  Colón requested to be removed from the salary investigation evaluation of Díaz for being a close friend.  Díaz had a panic attack in the bathroom of the employer's facilities in late May 2009 and Colón, with another employee, found her crying in the bathroom, for which as per policies, Díaz was referred to the SIF.  Since Colón witnessed the incident, she was interviewed by the SIF during the investigation.  (Deft's Uncontested ¶¶ 35-44; Exhibit 4, Mercado's statement ¶¶22-31; Exhibit 6, Mercado's depo., pp. 52-54, 70, 73, 117; Exhibit 10, Avilés' depo., pp. 63-64, 98-99; Exhibit 2, Colón's depo., p. 172).

Aside from the incident witnessed by Ms. Colón, her duties did not include preparing statements or reports for the SIF.  She had on occasion completed employer's reports for the SIF if the person in charge was not available.  The employer's company Infotech is a secured facility where all visitors are escorted by an authorized employee at all times.  Not all employees are authorized to escort visitors.  In order to be authorized, an employee must have completed certain authorization documents and sign a certification stating the understanding of ensuring all visitors are never left unattended, the potential consequences

these situations have for the company and the possible disciplinary action as to the employee if the visitor is left unattended.  Rosario, was authorized to act as escort for the SIF investigator who conducted interviews regarding Díaz' case.  Rosario did not intervene in any way with the interviews.  Rosario remained near the interview room so that the visitor was not left unescorted between interviews, as well as to escort the investigator out of the facilities upon conclusion of the interviews.  During the relevant interview, plaintiff Colón appeared normal and did not make any comment to Mr. Agrimalde Pérez, the SIF's investigator, about feeling intimidated. (Deft's Uncontested ¶¶45-52;  Exhibit 4, Mercado's statement ¶¶32-33; Exhibit 14, Infotech's Security Manual provided to Ms. Colón; Exhibit 6, Mercado's depo., pp. 116; Exhibit 9, Ms. Hermy Rosario's statement ¶¶19-24; Exhibit 15, Mr. Agrimalde Pérez' depo., p. 27).

### 4.      Colón's Disciplinary Investigation.

On June 12, 2009, Rosario showed Avilés a fax transaction found showing plaintiff Colón had faxed the confidential salary analysis of Díaz regarding pay disparity to Pérez, investigator in charge of Díaz' case before the SIF.  Since all information pertaining to pay disparity investigation is confidential, Avilés notified Mercado the document had been disclosed.  The employer's report referring to Díaz did not mention pay disparity.  Mercado requested a meeting with plaintiff Colón, witnessed by Avilés, as to why she had breached the confidentiality of the investigation as to the compensation complaint of Díaz and provided the document to the SIF.  Colón indicated the SIF investigator had requested the document.  Upon conclusion of said meeting, Colón was excused and was not disciplined

or threatened in any way.  Thereafter, Mercado called the SIF to inquire if they had requested additional investigation in connection with Díaz' case.  The SIF denied having requested the information and the only information requested was the name of the employee who served as translator to Mr. Dave Connor, another employee who was interviewed in connection to Díaz' referral to the SIF.  Pérez, the SIF investigator, testified he did not request any document when he conducted his investigation at Infotech and rather that Colón offered him the document in question.  The employees' manual clearly states an employee's wage information is sensitive and must be kept strictly confidential and may be disclosed solely upon written request by the employee or in the context of legal proceedings. Plaintiff Colón acknowledges salary information is confidential and admits having disclosed the salary evaluation without seeking authorization from anyone, including Mercado.  The employees' manual also states any violation of disclosing information deemed confidential entails corrective action, including a final warning.  The manual additionally provides, as a serious violation which could entail termination, removal from company premises of any property belonging to the company without authorization. It is also a violation that deserves corrective measures, including a final warning, to engage in insubordination, defined as deliberate refusal to follow orders from an immediate supervisor or member of management. (Deft's Uncontested ¶¶ 53-68; Exhibit 10, Avilés' depo., pp. 39-41, 98; Exhibit 6, Mercado's depo., pp. 68-69, 70-71, 96; Exhibit 9, Ms. Hermy Rosario's statement ¶27; Exhibit 4, Mercado's statement ¶¶35-36, 38-39;    Exhibit 2, Colón's depo., pp. 173, 181-182; Exhibit 16, minute meeting Mercado and Mr. Agrimalde

Neysa Colón v. Infotech Aerospace Services, Inc., et al
Civil No. 10-2220 (FAB/CVR)
Report and Recommendation
Page No. 13

Pérez; Exhibit 15, Mr. Agrimalde Pérez' depo., pp. 22, 24, 26; Exhibit 17, Employees'
Manual pp. 7, 12-14).

The following Monday, June 15, 2009, Colón called sick. When she returned to work
on June 16, 2009, Colón met with Tracy and Avilés. Colón was asked why she provided the
confidential salary comparison to the SIF without authorization, if she had compensation
information belonging to the company in her pen drive or personal drive "H" on the
company's server. When Colón answered in the affirmative, she was requested to transfer
the company's proprietary information to a password protected folder on the "O" drive.
Colón's personal files were not disturbed. Employees are not supposed to have
compensation-related information on their personal drives for the information is
confidential and neither could the employer company access its proprietary information if
it is located in Colón's pen drive. The compensation information in the "O" drive is
password protected and only certain persons have access. No action had been previously
taken as to Colón having proprietary information in her personal drives because prior to the
incident the employer had no reason to believe Colón was mishandling confidential
information. The tone of the meeting between Tracy and Colón, witnessed by Avilés, was
formal, very calm, Colón did not appear nervous or uncomfortable. Tracy did not raise his
voice nor become hostile or threaten plaintiff Colón at any time. At the conclusion of the
meeting of June 16, 2009, Colón was informed she was being suspended, with pay, for three
(3) days while an investigation was conducted about her violation of confidentiality relating
to Díaz' pay disparity claim. (Deft's Uncontested 69-80; Exhibit 10, pp. 43, 61-62, 73-75,

99, 100-102; Exhibit 18, minutes of Colon's meeting prepared by Jeffrey Tracy 6-16-2009; Exhibit 8, Tracy's depo., pp. 61-63, 64, 65; Exhibit 2, pp. 220, 243-244; Exhibit 19, Personnel Action form 6-16-2009).

The employees' manual specifically states the company may suspend an employee during an investigation. Suspension with pay is not a disciplinary action. The purpose of said administrative leave is to allow the company to continue the investigation, contact the SIF to verify the statements made by Colón and evaluate the situation to make a final decision. The company determined to keep Colón's investigation confidential for she was part of Human Resources and did not want her to feel uncomfortable in her work area. Avilés and Tracy made a commitment with Colón the matter was to be kept as confidential as possible.

On June 19, 2009, Avilés left a voice message to Colón instructing her to contact Tracy prior to returning to her work so Colón could retrieve the employee's badge which is necessary to access the premises and not having Colón pass through the lobby area to ask for the badge. Both Tracy and Colón reported to work earlier than Avilés and it would be easier for Colón to retrieve the badge from Tracy. As a result of the investigation, it was determined Colón violated company policies by disclosing confidential information and she incurred in insubordination for not following specific instructions of not to disclose salary evaluations of Díaz without first discussing it with Mercado. As a result, upon Colón's return to work, she was to be given a final corrective action, a written warning whereby an employee is advised that any further disciplinary issue may entail termination. Suspension

and/or dismissal were not contemplated disciplinary measures in Colón's case.  (Deft's Uncontested ¶¶81-91; Exhibit 17, employees' manual pp. 11-12; Exhibit 10, Avilés' depo., pp. 79, 81, 87, 89-90, 104, 107; Exhibit 8, Tracy's depo., pp. 56, 60, 63-64, 82-83; Exhibit 20, voice message of Avilés to Colón 6-19-2009; Exhibit 6, Mercado's depo., pp. 80-81, 84-86).

At the conclusion of her three (3) days suspension, Colón failed to report to work, but instead reported to the SIF.  Plaintiff Colón claimed that, from Avilés' voice message to pick up her badge from Tracy prior to reporting to work, she feared Tracy might attack or even kill her.  During the period Colón reported to the SIF, the employer company reserved her employment, as required by law, and kept the position open and available for her return. On February 8, 2010, the SIF determined Colón's condition was not related to her employment.  From said date, Colón had fifteen (15) days to request reinstatement or could be terminated.  Instead, the company held her position until Colón's resignation on March 18, 2010, one month later.  (Deft's Uncontested ¶¶ 92-97; Exhibit 2, Colón's depo., pp. 225-226, 287; Exhibit 6, Mercado's depo., pp. 75-76; Exhibit 10, Avilés' depo., pp. 92, 94; Exhibit 4, Mercado's statement ¶¶47-51; Exhibit 21, Colón's resignation letter 3-8-2010).

**5.    Other Alleged Discriminatory Acts.**

Plaintiff Colón also claims other acts of alleged discrimination of not being invited to seminars and conferences.  The only occasion Colón was not invited to attend a seminar was related to the Affirmative Action Plan for the company deemed it poor allocation of resources since an outside consultant had already been hired to prepare the Affirmative Action Plan and Colón had informed her previous employer had paid for her to go to New

York to take a similar seminar.  In another occasion, Colón avers not being invited, referring to a Human Resources convention which employees were authorized to attend.  Each employee was to pay for the seminar in advance and be subsequently reimbursed.  Colón indicated she would not attend for she could not pay in advance.

Plaintiff Colón asserts the only reason to sue Tracy is because he suspended her on June 16, 2009 and the request to pick-up her badge from Tracy as notified in the voice message by Avilés was inappropriate.  The only reason to sue Avilés is because she was present in the June 16, 2009 meeting with Tracy.  (Deft's Uncontested ¶¶ 98-103; Exhibit 10, Avilés' depo., pp. 58-59; Exhibit 9, Ms. Hermy Rosario's statement ¶¶34-36; Exhibit 2, Colón's depo., pp. 294-296, 311-312).

Defendants argue, on the above undisputed facts, plaintiff Colón is unable to establish a *prima facie* case of retaliation under Title VII or EPA for she did not engage in protected conduct.  Colon's actions of providing confidential salary analysis to the SIF was a breach of her duties and had nothing to do with the investigation that was being conducted regarding Díaz' workmen's compensation benefits.  It is also uncontested the SIF did not request such documentation as part of its investigation.  Plaintiff Colón acknowledged she did not follow the policies nor the appropriate channels to disclose the information on pay disparity, for there is no link between any adverse employment action and the alleged protected conduct.  Additionally, defendants submit the cross-training endeavors and the alleged seminar or conferences plaintiff Colón did not attend are not adverse employment actions nor were related to any discriminatory animus.  Neither was

the fact of Colón not receiving a performance bonus a result of discrimination for defendants' undisputed facts show plaintiff Colón did not properly submit the assigned tasks for a complete and efficient Affirmative Action Plan and the company had to retain the services of an expert to complete the job.

Upon the above submission of uncontested statements, defendants Infotech, Mercado, Avilés and Tracy submit having non-discriminatory reasons for any alleged adverse employment action as to plaintiff Colón, for which they are entitled to summary judgment unless plaintiff can establish these acts were but a pretext for retaliation.

**B.  Plaintiff's Uncontested Facts.**

In Colón's opposition to above defendants' request for summary judgment, plaintiff submits:

As to Colón's cross-training appointment, she was to maintain her previous position, which was not what happened, for she was deprived of her duties as Human Resources Specialist.  Colón was performing as a Business Partner for three (3) departments in 2009, which she had already performed back in 2008 and had seven other tasks eliminated, including the compensation analysis and the EEOC responsibilities.   (Plaintiff's Uncontested ¶¶10-11; Deft's Exhibit 2 at 121).[4]

Plaintiff Colón submits she provided Mercado the Affirmative Action Plan by

---

[4]  Plaintiff's statement of uncontested facts was objected by defendants insofar as she did not make proper reference to the record that supported same.  Upon defendants' filing of a reply to clarify plaintiff's averments, plaintiff then filed a sur-reply submitting some reference to Appendix numbers.  Defendants then filed a motion to strike claiming plaintiff's supplemental statement was late and also insufficient to defeat properly authenticated and specific record citations as to each of the defendants' contention in support of its motion for summary judgment. (Docket No. 103).

December of 2008. (Plaintiff's Uncontested ¶20; Exhibit 2, p. 127). Monge was retained as a consultant for the Affirmative Action Plan around February 23, 2009, while Mercado was informed of the plan deficiencies in July of 2009, thus plaintiff Colón submits Mercado hired Monge before knowing of the alleged deficiencies in the plan and six (6) months after plaintiff handed the plan to Mercado. (Plaintiff's Uncontested ¶¶23, 26). Plaintiff acknowledges Monge made unfavorable comments about the Affirmative Action Plan submitted by plaintiff Colón but considers she is not a reliable witness for she was ultimately hired to perform the duty plaintiff had previously performed and held a pecuniary interest. (Plaintiff's Uncontested ¶¶30-33).

Plaintiff Colón also admits Rosario was asked to escort the investigator of the SIF. Plaintiff submits the SIF investigator, Pérez, testified in the deposition according to his perception. Plaintiff Colón also admits as to the context of the employee's manual. (Plaintiff's Uncontested ¶¶50, 52, 63). Plaintiff further admits as to being told to transfer all compensation information from her pen drive, that the "O" drive is password protected, but argues pen drives are authorized by the Company for which reason its use is appropriate. (Plaintiff's Uncontested ¶¶73-77).

Plaintiff Colón concedes Tracy and Avilés intended her investigation to be kept confidential and their meeting took place in a professional manner. (*Id.*, ¶¶80, 84). Plaintiff considers the testimonies of Mercado, Tracy and Avilés to be self-serving and Colón does not admit or deny their statements.

<u>Neysa Colón v. Infotech Aerospace Services, Inc., et al</u>
Civil No. 10-2220 (FAB/CVR)
Report and Recommendation
Page No. 19

## LEGAL ANALYSIS

### A.      Claim of Discrimination and/or Retaliation.

In Colón's memorandum in opposition, plaintiff Colón refers to having timely submitted the Affirmative Action Plan, arguing as to the date of submission as of December 2008 or as indicated by defendants January 2009, of the applicable data that was alleged to be missing, but still has failed to dispute that defendant Infotech thereafter retained Monge to prepare the plan for the one submitted by plaintiff Colón was not acceptable. Plaintiff Colón avers Mercado simply did not like plaintiff's plan and put it aside. Neither does plaintiff Colón dispute defendants' facts that not only plaintiff, but other similarly situated employees in the Human Resources Department, were placed on cross-training or rotation, which was not considered a demotion by any of them nor was there any change in salary or benefits, and that plaintiff Colón also previously engaged in said Business Partner position. The mere proximity of these acts which plaintiff Colón considers adverse employment actions, without any indication of discrimination or retaliation does not serve to establish pretext by defendants.

Although plaintiff Colón submits as contested issue the disclosure of the confidential compensation evaluation to the SIF investigator, Pérez, was on account of having the investigator requested same, which the investigator has denied, there is no dispute on the relevant and genuine issue that said document was considered confidential and plaintiff Colón was required to obtain authorization from Mercado prior to disclosure, which she did not pursue. Rather, plaintiff Colón submits she faxed Pérez the document because he had

provided her with the fax number.  Although plaintiff Colón avers Pérez and her own testimony contradict each other as to who requested or produced the document first, and such should be considered a factual dispute that precludes summary adjudication, plaintiff does not rebut that indeed Pérez informed defendants about these events.  Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996) ("[T]he issue is not whether [the employer's] reasons ... were real, but merely whether the decision makers ... believed them to be real.").

Thus, at the time defendants imposed upon plaintiff Colón the three (3) day suspension, with pay, defendants' position was supported by the statements of the SIF investigator,  Pérez, as to plaintiff Colón's confidentiality breach –which is the relevant fact not in controversy regarding the acts of defendants not being pretextual.

Plaintiff's opposition further states she was told about the three (3) day suspension and was escorted outside the company after having to enter into her hard disk partition in the company's server and remove all her files from the folder to a secured folder.  Upon request, Colón produced her pen drive and was ordered to remove all work information from the drive.  (Appendix 21).  Thereafter, plaintiff Colón was escorted outside the company. (Appendix 28). Plaintiff Colón has not rebutted having confidential information in her pen drive nor in the personal drive directory of the Company's server.  The claim was solely that the company authorized the use of a pen drive for which it should be considered allowed for her to have documents therein.  Nothing was rebutted as to the confidential nature of the documents to be allocated in a pen drive or to a non-password protected

driver. As such, it remains without opposition the uncontested facts presented by defendants in that plaintiff Colón's actions were then considered sufficient to initiate an investigation as to the employer's a breach of trust and violation to the employees' manual, which the company reasonably construed as misconduct and failure to follow previous direct instructions on the confidentiality of the information regarding the compensation disparity report.

Notice is taken also that such a breach, which was knowing and voluntary, came from a Human Resources Specialist who was well aware of the confidential nature of such information. Such a decision by the employer to initiate an investigation and place the employee on a three (3) day suspension with pay was rational and reasonably based and not a pretext for discrimination.[5]

Plaintiff's opposition claims she felt apprehension upon receiving a call to meet Tracy outside the company lobby early on the day she was to return to work after the three (3) day suspension concluded. Instead, plaintiff Colón reported to the SIF to be treated for an alleged mental condition until February 8, when a final decision was rendered by SIF the condition was not job related. Plaintiff Colón argues that, because she still felt humiliated and feared further harassment, she resigned on March 8, 2009. However, plaintiff Colón

---

[5] When assessing a claim of pretext in an employment discrimination case, the court must focus on the motivations and perceptions of the employer's decision maker. Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1ˢᵗ Cir. 1991). Whether these perceptions are accurate or not, and the motivations apt or inept, so long as they are not discriminatory it is beyond the province of the court to act as a "super personnel department[ ]," second-guessing the process by which the decisionmaker has arrived at her conclusion and, in effect, substituting its own business judgment for that of the employer. Bennett v. Saint–Gobain Corp., 507 F.3d 23, 32 (1ˢᵗ Cir.2007).

Neysa Colón v. Infotech Aerospace Services, Inc., et al
Civil No. 10-2220 (FAB/CVR)
Report and Recommendation
Page No. 22

has not addressed the content of the voice message left so that she was to pick-up her badge from Tracy early in the morning and the reasons therein stated as to why it was agreed to do so instead of her having to pick-up her badge at the lobby to keep the matter confidential.

A review of the produced recording and a lack of plaintiff's arguments on the message, except for a general averment she felt threatened by defendant Tracy, show anything but that the tone and the explanations therein given by Avilés could be deemed pretextual or even consonant with plaintiff's reaction not to show up for work after the three (3) day suspension upon picking up her badge.

A review of above plaintiff's statements, besides information considered not relevant to genuine material facts in controversy for summary judgment, indicates plaintiff Colón has failed to abide by the anti-ferret rule doctrine wherein not only are many of these statements lacking in supportive documentation and proper record citation but are for the most part conclusory. At times, plaintiff Colón totally disregards defendants' supported and uncontested statements for considering these unreliable for pecuniary interest or as self-serving testimonies of defendant Infotech's high ranking officers.[6] Notwithstanding plaintiff's attempt to disregard defendants' statements, a party's own affidavit, containing relevant information of which he/she has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment. *See* Nereida-González

---

[6] An "anti-ferret rule" is aimed at enabling a district court to adjudicate a summary judgment motion without endless rummaging through a plethoric record; parties ignore the strictures of such a rule at their peril. *See* Puerto Rico American Ins. Co. v. Rivera-Vázquez 603 F.3d 125, 131 (1st Cir. 2010) (citations omitted).

v. Tirado-Delgado, 990 F.2d 701, 706 (1ˢᵗ Cir.1993); Cadle Co. v. Hayes, 116 F.3d 957, 961, n. 5 (1ˢᵗ Cir. 1997).

**B.      Retaliation - Protected Activity**.

In addition to the claim of discrimination, plaintiff Colón avers she was subject of retaliation because of a protected activity, that is, for participating in the SIF investigation as to employee Díaz' application for workmen's compensation.  In order to establish *prima facie* case of retaliation in employment discrimination action, plaintiff employee must show that he/she engaged in protected activity and that he/she suffered adverse employment action as result of participation in that activity.  *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).[7]  That is, plaintiff bears the initial burden of making a *prima facie* showing of three elements: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection existed between her protected activity and the adverse employment action. *See* Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1ˢᵗ Cir.2004).  Similarly under Law No. 115, a plaintiff-employee must show that she engaged in protected activity and that she was thereafter "discriminated against regarding her employment." Vélez v. Janssen Ortho, LLC, 467 F.3d 802 (1ˢᵗ Cir. 2006).  *See* Uphoff Figueroa v. Alejandro, 597 F.3d 423 (1ˢᵗ Cir. 2010) (to establish a claim under Puerto Rico law prohibiting employers from discriminating against employees for offering or

---

[7] McDonnell Douglas paradigm operates only when there is no direct evidence of a discriminatory animus. *See, e.g.*, Price Waterhouse, 490 U.S. at 244-47, 109 S.Ct. 1775 (plurality op.); *id.* at 278-79, 109 S.Ct. 1775 (O'Connor, J., concurring); Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1ˢᵗ Cir. 1998).

attempting to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, employees must establish they engaged in activity protected under the law and then suffered discrimination at work).

Plaintiff Colón's disclosure of confidential information, as well as keeping it in her pen drive and in non-password protected drive was contrary to her employer's policy and the effective performance of her position as Human Resources Specialists. *See* Texas Instruments, Inc. v. N.L.R.B., 637 F.2d 822 (1st Cir. 1981) (holding employees' conduct in disclosing confidential information of the employer and contrary to the employees' guidelines, was not protected activity and the rights of employees under a particular law must in each instance be understood in relation to the concrete facts of a particular case).

A review of the uncontested facts presented in this case shows the confidential information regarding salary compensation comparison of male and female employees was prepared by plaintiff Colón upon assignment of its employer Infotech and it was clearly considered confidential. Specific instructions were provided to plaintiff Colón as to the confidential nature of same and that it was not to be disclosed except upon authorization to be requested from Mercado, the Human Resources Manager. Additionally, it was also uncontested the personnel information that was kept by plaintiff Colón in her pen drive was also confidential and the proprietary resources of the employer, that was not expected to be contained in a non-password protected media. Likewise as to the information contained in the personal drive and not in the employer's specific password-protected drive. Still more, the SIF investigation regarding Díaz was in relation to workmen's compensation, not

to any salary compensation claim that had previously been administratively conducted by the employer and assigned said task to plaintiff Colón.  With said uncontested facts, plaintiff is unable to establish she participated in a protected activity on account of which she suffered discrimination and/or retaliation.

## C.      Pretext.

Even if we were to consider plaintiff Colón has established she participated in a protected activity, matter we do not find, and the employer's action were adverse, upon the submission of defendants as to proper business reasons to support same, plaintiff would have to come forward to show that these acts were but a pretext for discrimination. When assessing a claim of pretext in an employment discrimination case, court focuses on motivations and perceptions of actual decision make. Once the plaintiff makes out a *prima facie* case, the burden of production (but not the burden of proof) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the dismissal. *See* Mesnick v. General Elec. Co., 950 F.2d at  823. If and when the defendants satisfy the burden of production, plaintiff no longer can rest on the initial inference of discrimination but, rather, must show that the defendants' articulated reason is pretextual. *See* Bonefont-Igaravidez v. International Shipping Corp., 659 F.3d 120, 124 (1st Cir. 2011); *see also* Dávila v. Corporación De Puerto Rico Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007).

Plaintiff Colón's arguments as to pretext are limited, except referring that not granting her a performance bonus in 2009 was discriminatory act of defendants for the bonus was on account of the work she had done the previous year 2008 and any problem

she may have faced with the employer dealt with 2009 actions.  Pretext can be established by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's offered reasons for the termination that a "reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Gómez–González v. Rural Opportunities, Inc., 626 F.3d 654, 662–63 (1st Cir.2010).

Plaintiff Colón's opposition fails to establish any factual dispute that defendants' grounds for employment actions were pretextual and but a reason for discrimination.

**D.     Retaliation.**

Besides above argument of engaging in protected conduct and not receiving a performance bonus in 2009 for work done during the year 2008,  plaintiff Colón submits she suffered retaliation for undergoing a three (3) day suspension for alleged disclosure of confidential information.  To establish a *prima facie* case of retaliation, an employee must show that he/she (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse job action. *See* Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005). For a retaliation claim to " 'survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory.' " Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 57 (*quoting* King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir.1997)).

Plaintiff Colón submits as adverse employment actions being appointed to Business Partner, which she considered a demotion and not having participation in some conference/training. These were considered acts of retaliation for having participated in a protected activity. We have already discussed no such protective activity ensued.

Defendants have submitted uncontested business reasons in regard to plaintiff Colón not having participated in some of the training. On one occasion, the decision was made not to have plaintiff attend an affirmative action training since she had already informed she was trained by her previous employer and defendants had already retained an expert, Monge, to prepare their affirmative action plan. On another occasion, plaintiff Colón was to attend but it required participants to advance payment of expenses and thereafter be reimbursed by the employer, to which plaintiff Colón indicated she could not make the advance payment. Plaintiff Colón did not establish the reasons proposed by defendants in regard to these training were but a pretext for discrimination and/or retaliation.

Plaintiff Colón must also show there are genuine issues of material fact in controversy that she indeed suffered an adverse employment action, not merely that she had suffered an "employment action," but instead whether she experienced a materially adverse action, that is, mistreatment that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 57, 126 S.Ct. 2405; *see also* Dixon v. International Broth. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007).

Inasmuch as there is no adverse employment action established from the assignment as a Business Partner nor for not being sent to some of the training alluded to by plaintiff, adverse employment action as a part of a discriminatory pattern or as to retaliation is not a controverted issue of material fact.

**E.   Adverse Employment Action/Employment Termination.**

First and foremost, plaintiff Colón was not dismissed from her employment but she resigned alleging fear of humiliation and/or perceived threat if she returned to work.  To be materially adverse, the challenged employment action must be one that could "'dissuade a reasonable worker from making or supporting a charge of discrimination.' " Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 81 (1st Cir.2007) quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S.Ct. 2405 (2006). This is an objective test and "'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.' " Burlington N. & Santa Fe Ry. Co., 548 U.S. at 71, 126 S.Ct. 2405 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81, 119 S.Ct. 998 (1998).

Plaintiff Colón submits adverse employment action resulted in submitting her letter of resignation on her perceived fear of retaliation.  Still, a right to oppose discrimination is not right to refuse to work on account of discrimination or even a failure to report to work when due.  Requirements of the job and the tolerable limits of conduct in a particular setting must be explored in determining whether conduct of an employee is relevant to an employee's opposition to employer's discrimination and, hence, is immunized. Similarly, other labor cases define the bounds of concerted activity as protected or not against disloyal

and/or insubordinate conduct. *See* Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222 (1st Cir. 1976) (*citing* NLRB v. Red Top, Inc., 455 F.2d 721 (8th Cir., 1972) (employee's threat to take complaints to employer's customer is a disloyal act designed to harm employer and supports employee's discharge); Boaz Spinning Co. v. NLRB, 395 F.2d 512 (5th Cir. 1968) (employee's deliberate defiance of employer's rules limiting employee's right to speak at plant meeting constitutes insubordination and justifies discharge).

Plaintiff Colón in her opposition claims that, upon hearing a voice recorded message from Avilés to report to work at the conclusion of her three (3) day suspension and upon requested to pick-up her badge through Tracy, she felt threatened and thus did not show up and reported to the SIF. Defendants have submitted the recording, the transcript and the English translation of the message left for plaintiff Colón, which contain a clearly spoken statement, in a modulated tone of voice and highly professional manner Avilés's instructions for plaintiff Colón to show up for work, how she was expected to be back at work, without any threat or potential adverse action and stated justifiable reasons for plaintiff to pick her badge with Tracy (for he used to arrive earlier than other employees; to keep of plaintiff Colón's investigation confidential from other employees and thus avoid that plaintiff would have to go through the lobby to request her badge from security). Furthermore, it is undisputed there was no animosity between plaintiff Colón and Tracy for plaintiff acknowledged in her deposition their prior meetings had been professional.

A review of the request for summary judgment filed by defendants and the respective oppositions and replies have not raised the existence of a genuine issues of material fact in controversy. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510 (1986). "Moreover, summary judgment may be appropriate '[e]ven in cases where elusive concepts such as motive or intent are at issue, ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' " *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir.1994) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)). Finally, Fed.R.Civ.P. 56(c) "mandates the entry of summary judgment, ... upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).[8]

## CONCLUSION

In view of the foregoing, having examined defendants' request for summary judgment, and there being no genuine issue of material fact in controversy, this Magistrate

[8] The non-movant bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). An issue is genuine if it "must be decided at trial because the evidence, viewed in the light most flattering to the non-movant, would permit a rational factfinder to resolve the issue in favor of either party." Medina-Muñoz, 896 F.2d at 8 (citation omitted).

Judge recommends that defendants' Motion for Summary Judgment be GRANTED. (Docket No. 69).

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Amended Fed. R. Crim P. 59 (b)(2). *See* Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.

San Juan, Puerto Rico, this 21st day of May of 2012.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE