IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NEYSA COLON,

     **Plaintiff,**

       **v.**                     **CIVIL NO.** 10-2220 (FAB)

INFOTECH AEROSPACE SERVICES INC,
*et. al.,*

     **Defendants.**

OPINION AND ORDER[1]

BESOSA, District Judge.

     Before the Court is a Report & Recommendation ("R&R") issued by United States Magistrate Judge Velez-Rive.  (Docket No. 104.) The R&R granted the motion for summary judgment filed by defendants Infotech Aerospace Service, Inc. ("IAS"), Luis Mercado ("Mercado"), Iveetzia Avilez ("Avilez") and Jeffrey Tracey ("Tracey") (hereafter "defendants").  (Docket No. 69.)  After an independent review of the record and plaintiff Neysa Colon's ("Colon") objections to the R&R, (Docket No. 108), the Court **ADOPTS** the R&R and **GRANTS** the defendants' motion for summary judgment.

I.  **Procedural Background**

     Plaintiff Colon filed a complaint on December 13, 2010, alleging that her employer, IAS, violated Title VII of the Civil

---

    [1] Justin Rowinsky, a second-year student at the Georgetown University Law Center, assisted in the preparation of this Opinion & Order.

Rights Act of 1964, 42 U.S.C. § 2000(e) (2012) ("Title VII"); the Equal Pay Amendment, 29 U.S.C. § 206(d)(1) (2012) ("EPA"); P.R. Laws Ann. tit. 29, § 146 (2009) ("Law 100"); and P.R. Laws Ann. tit. 29, § 194 (2009) ("Law 115") by retaliating against her for engaging "in protected conduct." (Docket No. 1 at p. 7.) Colon also alleged that defendants Mercado, Tracey and Avilez were personally liable pursuant to Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31, § 5141 (2009), for their "conspiracy and engagement in discriminatory acts" in concert with IAS. Id. at p. 8. Defendants filed a motion to dismiss Colon's Law 100 claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 14, 2011, claiming that Colon had failed to establish facts that could support judgment in her favor. (Docket No. 28.) The Court referred the motion to dismiss to Magistrate Judge Velez-Rive, who issued an R&R on December 21, 2011 that recommended granting the motion. (Docket No. 38.) The Court adopted the R&R in full and granted the defendants' motion to dismiss Colon's Law 100 without prejudice on January 10, 2012. (Docket No. 43.)

Colon's remaining claims were pursuant to Title VII, the EPA, and Law 115. On April 2, 2012, defendants filed a motion for summary judgment on those remaining claims. (Docket No. 69.) Colon responded with her opposition on April 25, 2012, (Docket No. 83), to which defendants filed a reply on May 10, 2012.

(Docket No. 98.)  Magistrate Judge Velez-Rive issued an R&R on May 21, 2012 that recommended granting the defendants' motion for summary judgment, and which is the subject of this order.  (Docket No. 104.)

**A.   Factual History**

The complete factual record is contained in the R&R (Docket No. 104), and the Court will not rehash it here.  The Court will instead highlight the material facts relevant to Colon's remaining claims against the defendants and their motion for summary judgment.

Colon was an employee of IAS's Human Resources ("HR") department from April 30, 2007 through her resignation on March 18, 2010.  (Docket No. 70 at ¶¶ 1, 97.)  She was a "Generalist," meaning that her role encompassed various responsibilities including oversight of the benefits and compensation of IAS employees.  Id. at ¶ 2.  In 2007, she was assigned to work on IAS's Affirmative Action Plan ("AAP"), a necessary condition of IAS's contract with the U.S. government.  Id. at ¶ 4.  In December, 2008 Colon gave a copy of her AAP report to Mercado, the HR Manager who

considered the report to be "six months late"[2] and "a draft."[3] Id. at ¶¶ 25, 29.

On February 23, 2009, IAS hired Ms. Janice Monge ("Monge") to work on the AAP report for 2009 (annual AAP reports are required). Id. at ¶ 26. Mercado eventually asked Monge to analyze Colon's previously submitted AAP in July 2009, after Colon had already resigned. (Docket No. 70-13 at p. 43:11-13 & Docket No. 70 at ¶ 28.) Monge informed Mercado that several aspects of Colon's previously submitted AAP report were lacking or statistically deficient. (Docket No. 70-13 at p. 53:5-23.)

In December 2008, Mercado decided to cross-train certain HR employees to ensure an employee's functions could still be performed by a back-up if necessary, and to have the employees gain experience and "learn other things." (Docket No. 70-6 at pp. 36:2-4 & 43:3-12.) In January 2009, Colon and three other HR employees were rotated to different roles as part of this cross-training plan. (Docket No. 70 at ¶¶ 11, 13, 15.) This was not the first time that Colon had participated in cross-training; she had previously done so as part of a plan implemented in January 2008.

---

[2] Mercado considered the AAP report late because it was for the period of July 1, 2007 through June 30, 2008. (Docket No. 70-2 at p. 127.)

[3] Mercado also indicated that Colon's work on the AAP report "was a long process" and that "[w]e had to follow up consistently." (Docket No. 70-6 at p. 11:24-25.)

Id. at ¶ 16.   Colon was assigned "Business Partner" responsibilities, a "pretty busy job" that made her the HR contact person for potentially hundreds of IAS employees.  Id. at ¶¶ 11-12. In addition to Colon, two other HR "Generalists" were also given "Business Partner" responsibilities at that time.  Id. at ¶ 17. Colon's evaluation and bonus for 2008 were favorable, and her salary and benefits were not changed while she cross-trained.  Id. at ¶¶ 19-20.

In March 2009, Colon was asked to participate in the investigation of a claim raised by Ms. Anayanssi Diaz ("Diaz"), a female employee from one of the departments assigned to Colon as part of her "Business Partner" responsibilities.  Id. at ¶¶ 35-38. Diaz alleged a pay disparity between herself and a male employee. Id.  Because the investigation necessarily included an analysis of various employees' salary and benefits, Mercado personally instructed Colon and the other investigators to keep all of that information confidential, and required his authorization prior to disclosing any of it.  Id. at ¶¶ 39-40.  At some point Colon asked to be removed from the investigation because she claimed to be Diaz's close friend.  Id. at ¶ 41.

In late May 2009, Colon was interviewed by the State Insurance Fund ("SIF") because she had witnessed Diaz have a panic attack at work.  Id. at ¶¶ 42-45.  Colon was not asked to prepare

a statement or report at that point in time.  Id.  Pursuant to IAS protocol, HR employee Ms. Hermy Rosario ("Rosario") escorted SIF investigator Mr. Agrimalde Perez ("Perez") throughout his time in the IAS building.  Id. at ¶¶ 47-52.  Accordingly, Rosario remained near but outside the room in which Perez interviewed Colon about Diaz's panic attack and subsequent insurance claim.  Id.  Colon made no comments about the presence of Rosario at the time of the interview or after it.  Id.

On June 12, 2009, Rosario informed Avilez (who in turn told Mercado) that she had found a fax transaction report indicating that someone had faxed confidential information from the investigation of Diaz's claim to SIF investigator Perez.  (Docket No. 99 at ¶ 53.)  Mercado interviewed Colon who admitted that she had faxed the information even though it was confidential and she had not requested prior approval from Mercado as he had instructed.[4]  (Docket No. 70 at ¶¶ 55, 64-65.)  The IAS employee manual indicates that disclosing information deemed confidential by the company is a violation sanctionable by corrective disciplinary action.  Id. at ¶¶ 63, 66.  On June 16, 2009, Tracey and Avilez met

_____

[4] The Court notes that there is a factual dispute as to whether SIF investigator Perez specifically requested the information (as Colon avers) or whether Colon faxed the information on her own initiative.  Regardless, the Court finds Colon's admission that she faxed the information without requesting prior approval from Mercado as the material and undisputed fact relevant to this section of her complaint and the R&R's analysis.

with Colon to discuss her faxing of the confidential information.
Id. at ¶¶ 70-71.   Colon also admitted to having confidential
information on her personal "pen drive" and personal data drive on
IAS's server ("H drive"), even though such confidential information
is only permitted on the password protected "O drive."   Id. at ¶¶
72-77. Mercado and Avilez informed Colon that she was being placed
on a three day suspension with pay while they investigated her
violation of IAS policy.   Id. at ¶¶ 79, 81.   IAS regards suspension
with pay as an "administrative leave" that is not considered a
disciplinary action.   Id.

     IAS ultimately decided to issue a final corrective action
to Colon when she returned to work in the form of a formal written
warning advising her that future conduct warranting discipline may
entail termination of her employment.   Id. at ¶¶ 89-91.   Before
beginning her suspension, Tracey and Avilez had told Colon that
they wished to keep the investigation of her conduct confidential
for her privacy and benefit.   Id. at ¶¶ 84-85.   Because Colon's
identification badge had been taken from her before she served her
suspension, and IAS wished to keep the suspension itself
confidential, Avilez left a voicemail with Colon that stated she
should contact Tracey so that he could return Colon's
identification badge to her.   Id. at ¶¶ 85-87.   Instead of
contacting Tracey and returning to work, however, Colon reported to

the SIF because she feared for her "personal security" and that it "could be" that Tracey would "attack" her. <u>Id.</u> at ¶ 93; Docket No. 70-2 at p. 287. During that period of time, IAS kept her position open as required by law. <u>Id.</u> at ¶¶ 94-95. Colon eventually resigned on March 8, 2010. <u>Id.</u> at ¶ 96.

**B.   Colon's Objections to the R&R's Findings**

Defendants moved for summary judgment on all of Colon's remaining claims. (Docket No. 69.) The R&R determined that the defendants' motion for summary judgment should be granted because there was no genuine issue of material fact in dispute, and no reasonable jury could find for Colon on any of her claims. (Docket No. 104 at pp. 30-31.)

Colon timely objected to several of the R&R's conclusions. (Docket No. 108.) First, she objects to the R&R's legal analysis of the proximity element in employee retaliation claims. <u>Id.</u> at p. 3. Second, Colon objects to the R&R's conclusion that IAS had a legitimate reason to reassign her AAP responsibilities because the report was late and contained mistakes and omissions; Colon contends that the record and relevant facts dispute those conclusions. <u>Id.</u> at pp. 5-6. Third, Colon objects to the R&R's findings concerning her personal pen drive and disclosure of confidential information to the SIF, arguing that IAS's determination that certain documents are confidential does

not "defeat legally imposed duties" such as cooperating with an SIF investigation. Id. at pp. 7-8, 10. Finally, Colon argues that the R&R improperly viewed each of IAS's actions as discrete rather than a "reprisal course of action." Id. at p. 11.

## II.  Legal Standards

### A.   Standard under 28 U.S.C. § 636(b)(1)

A district court may refer a case to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B) (2012); Fed.R.Civ.P. 72(b); Loc. Rule 72(b). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report. See 28 U.S.C. § 636(b)(1) (2012); Loc. Rule 72(d). A party that files a timely objection is entitled to a de novo determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)). Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992). Furthermore, the objecting party must put forth more than "[c]onclusory objections that do not direct the reviewing court to the issues in controversy." Velez-Padro v. Thermo King de Puerto Rico, Inc., 465 F.3d 31, 32 (1st Cir. 2006).

        In conducting its review, the court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636 (a)(b)(1) (2012); <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d 245, 247 (1st Cir. 1985); <u>Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.</u>, 286 F. Supp. 2d 144, 146 (D.P.R. 2003).  The Court may also accept those parts of the report and recommendation to which the parties do not object.  <u>See</u> <u>Hernandez-Mejias v. Gen. Elec.</u>, 428 F.Supp.2d 4, 6 (D.P.R. 2005) (citing <u>Lacedra v. Donald W. Wyatt Detention Facility</u>, 334 F.Supp.2d 114, 125-126 (D.R.I. 2004)).

**B.    Standard for Summary Judgment under Federal Rule 56(c) and Local Rule 56**

        Summary judgment is appropriate when the moving party cites "depositions" and "documents" that establish there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a), 56(c)(1)(A); Loc. Rule 56.  If a fact is contested by the parties, it must have the potential to "affect the outcome of the suit under the governing law" in order to qualify as a genuine dispute over a material fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  This threshold ensures that the "mere existence of some alleged factual dispute" that is "irrelevant or unnecessary" will not prevent summary judgment when a reasonable jury could not find

for the non-movant. Id. at 247-48, 252. The initial burden is on the moving party to demonstrate "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Upon that showing, the non-movant must "present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (internal citation omitted). If the non-movant bears the ultimate burden of persuasion, it must demonstrate that there is a dispute over a material fact "essential to that party's case." Celotex Corp., 477 U.S. at 322.

The Court "must view the entire record in the light most hospitable" to the non-movant, and draw "all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The Court does not make "[c]redibility determinations" or weigh the evidence, for those are "jury functions." Anderson, 477 U.S. at 255. The Court also does not need to consider "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernandez v. Phillip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Rules such as Local Rule 56 "are designed to

function as a means of "'focusing a district court's attention on what is - and what is not - genuinely controverted.'" Id. (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56(c). Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 130 (1st Cir. 2010). Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernandez, 486 F.3d at 7.

### C.   Legal Standard for Proving Employer Retaliation

To prove that an employer retaliated in violation of Title VII and the EPA, a plaintiff bears the initial burden of making a *prima facie* showing that: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection existed between the protected activity and the adverse employment action. See, e.g., Hodgens v. General Dynamics

Corp., 144 F.3d 151, 160-161 (1st Cir. 1998) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Similarly, under Law 115, a plaintiff must prove that she engaged in protected activity and was then "discriminated against regarding her employment." See Velez v. Janssen Ortho, LLC, 467 F.3d 802, 809 (1st Cir. 2006) (also holding that "Title VII and Law 115 are largely symmetrical in scope").

The employer then has a burden of persuasion to offer a "legitimate, nondiscriminatory justification for the adverse employment decision" that is the basis of the plaintiff's complaint. See Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). If the employer satisfies that requirement, the plaintiff then "retains the ultimate burden of showing that the employer's stated reason . . . was in fact a pretext for retaliati[on]." Hodgens, 144 F.3d at 161. When evaluating a plaintiff's claim of pretext, courts should focus on "whether the employer believed its stated reason to be credible," even though the "employer's good faith belief is not automatically conclusive." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45-46 (1st Cir. 2002) (quoting Mesnick, 950 F.2d at 823-24). The plaintiff must introduce facts that would allow a reasonable jury to find that the employer's stated rationale is a "sham," Mesnick, 950 F.3d at 824 (internal citation omitted), and can do so by highlighting

"weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons." Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662-63 (1st Cir. 2010).

## III. Discussion

Even though timely objections to an R&R entitle the objecting party to *de novo* review of the findings, "the district court should be spared the chore of traversing ground already plowed by the Magistrate." Gonzalez-Ramos v. Empresas Berrios, Inc., 360 F.Supp.2d 373, 376 (D.P.R. 2005) (citing Sackall v. Heckler, 104 F.R.D. 401 (D.R.I. 1984)).  The party's objections must be grounded "in fact . . . and warranted by existing law or a good faith argument for the extension" rather than a reiteration of arguments already considered and rejected by the Magistrate Judge. Id.  The Court will first summarize the R&R's findings of law, and then address each of Colon's objections.

### A.    The R&R's Findings of Law

The R&R concluded that Colon failed her burden to prove by a preponderance of the evidence that IAS retaliated against her in violation of Title VII, the EPA, and Law 115.  (Docket No. 104 at pp. 23-25.)  Specifically, the R&R noted that Colon failed to establish a *prima facie* case as well as prove successfully to that IAS's stated rationale was a pretext for retaliation (assuming

Colon had made a *prima facie* case to begin with).  <u>Id.</u> at pp. 25-
26.   The R&R held that Colon's faxing of confidential salary
information in direct contradiction to instructions given to her
personally by Mercado, and the keeping of confidential information
on her pen drive and H drive in contravention of IAS policies, were
violations of the terms of her employment rather than protected
conduct.  <u>Id.</u> at p. 24; <u>see also</u> <u>Texas Instruments v. N.L.R.B.</u>, 637
F.2d 822, 833 (1st Cir. 1981) (holding that violation of a company
rule that "prohibited disclosure of classified material" was a
"good" reason for discharging the employees).

        In addition, the R&R held that Colon had not suffered an
adverse employment action, the second requirement to establish a
*prima facie* case.   (Docket No. 104 at pp. 27-29.)   The R&R held
that Colon had failed to demonstrate mistreatment that "could well
dissuade a reasonable worker from making or supporting a charge of
discrimination."  <u>Burlington N & Santa Fe Ry. Co. v. White</u>, 548
U.S. 53, 57 (2006).

        Evaluating an adverse employment action is an objective
test, "judged from the perspective of a reasonable person in the
plaintiff's position."  <u>Id.</u> at 71.   The R&R further held that
Colon's stated rationale for choosing to resign was not a factual
dispute because the voicemail left on her phone was not threatening
in any way, and there was no evidence of animosity between Colon

and Tracey at any time.  (Docket No. 104 at p. 29.) (holding that the message was spoken in "a modulated tone of voice" and was "highly professional.")  The R&R also concluded that because the evidence did not support a finding of an adverse employment action, and Colon had not engaged in protected conduct, the "mere proximity" of the actions Colon considered adverse was not enough to establish a causal connection.  Id. at p. 19.

The R&R continued to find that even if Colon had established a *prima facie* case of retaliation, IAS's stated reasons for cross-training Colon and suspending her with pay were "facially adequate" and therefore the burden would remain with Colon to prove that IAS's actions were pretextual.  (Docket No. 104 at pp. 25-26); see also Davila v. Corporacion de Puerto Rico para la Difusion Publica, 498 F.3d 9, 16 (1st Cir. 2007).  The R&R found that Colon's arguments as to pretext were "limited," and failed to establish a factual dispute over IAS's stated rationale for its decisions.  (Docket No. 104 at pp. 25-26.)  Based on Colon's failure to establish both a *prima facie* case and to demonstrate that IAS's rationale was a pretextual sham, the R&R recommended granting the defendants' motion for summary judgment.

**B.    Colon's Objections to the R&R's Findings**

An objecting party must "specifically identify the portions of the proposed findings and recommendations to which

objection is made." Loc. Rule 72(d). In contrast, Colon's objections were not all clearly identified and linked to specific findings and conclusions in the R&R. This failure parallels Colon's brief opposing the defendants' motion for summary judgment that contained conclusory statements and lacked proper citations to the record. (Docket No. 83.) The "anti-ferret" rule is specifically aimed at permitting the Court to "adjudicate a summary judgment motion without endless rummaging through a plethoric record." See Puerto Rico American Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir. 2010). Despite that rule, the Court has attempted to group Colon's objections to the R&R's findings together based on the applicable substantive law. The Court will generally adhere, however, to the order of the objections as they are presented in Colon's motion. (Docket No. 108.)

### i. The Temporal Proximity between the alleged Adverse Employment Action and alleged Protected Conduct is Irrelevant

Colon objects to the R&R's "legally flawed" (Docket No. 108 at p. 3) finding that the "mere proximity" of IAS's alleged adverse employment actions against Colon were insufficient to establish pretext "without any indication of discrimination or retaliation." (Docket No. 104 at p. 19.) After a *de novo* review of the law, the Court concludes that Colon misunderstood the R&R's finding.

Although a "particularly close temporal proximity" between the protected conduct and adverse employment action can be "strongly suggestive of retaliation," it is only one of three requirements for establishing a *prima facie* case of retaliation. See Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 49 (1st Cir. 2010) (internal quotation omitted) (holding that being fired within two weeks of reporting sexual harassment is an adverse employment action sufficiently proximate to engaging in protected activity).  Colon contends in her objection to the R&R that the cross-training was contemporaneous with her turning in the AAP report.  (Docket No. 108 at pp. 3-4.)  Evaluating a causal connection is necessary only after determining that an employee engaged in protected conduct and then encountered an adverse employment action.  For example, the First Circuit Court of Appeals addressed the proximity issue only after concluding that reporting sexual harassment was protected conduct, and holding that the employee's termination was an adverse employment action.  Collazo, 617 F.3d at 47-49.

In contrast to Collazo, the R&R specifically found that Colon's disclosure of confidential information was not protected conduct, and that IAS's cross-training program and reassignment of AAP responsibilities were not adverse employment actions.  This is the basis for the R&R's conclusion that "mere

proximity" was not enough "without any indication of discrimination or retaliation." (Docket No. 104 at p. 19.)  The Court now turns to Colon's objections to the R&R's findings concerning IAS's actions and Colon's alleged protected conduct.

### ii. IAS had a Legitimate Business Rationale for its Actions

Colon also objected to the R&R's finding that the late submission of her AAP and the mistakes and omissions it contained were sufficient to justify IAS's decision to remove Colon's responsibility to produce AAP reports. (Docket No. 108 at pp. 5-6.)  First, the Court notes that these two objections are essentially identical to arguments made in Colon's motion opposing summary judgment. (Docket No. 83.)  Colon had highlighted the fact that Monge's opinion of Colon's AAP report was not solicited until July 2009 (after Colon had resigned), and that Mercado "never contacted Colon to inquire" about the AAP.  Id. at pp. 3-4. Despite this argument, the R&R cited Mercado's sworn deposition that he "knew something was missing" from Colon's AAP report when she submitted it in December 2008 (Docket No. 70-6 at p. 34), and that he had considered it just a "draft." (Docket No. 70-2 at p. 125:23-25.)  The R&R then concluded that Mercado's concerns as a manager were sufficient to justify reassigning the AAP responsibility to Monge. (Docket No. 104 at p. 19.)

In addition, even if Mercado was not aware of any deficiencies in Colon's AAP report, "employers must be accorded reasonable flexibility in operational matters." Ahern v. Shinseki, 629 F.3d 49, 56 (1st Cir. 2010).  Thus, Mercado's decision to cross-train IAS employees to ensure that backups were available to fill in when needed was a legitimate business decision regardless of the alleged quality of Colon's work product.  See id.  Moreover, IAS's HR department had cross-trained employees previously, including Colon herself in 2008.  (Docket No. 70-2 at p. 249:21-24, Docket No. 70 at ¶ 16.)  This prior history also demonstrates that IAS's cross-training of Colon did not "deviate[] inexplicably from one of its standard business practices."  See Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 68 (1st Cir. 2008).  The Court agrees with the R&R's finding that Mercado's decision to cross-train Colon and reassign her AAP responsibilities to Monge were legitimate business decisions regardless of the timing of Monge's eventual evaluation of Colon's AAP report.

### iii. Colon's Disclosure of Confidential Information was not Protected Conduct

Colon also objects to the R&R's findings regarding her disclosure of confidential salary information to the SIF and the storage of similar information on her personal pen drive and personal H drive.  (Docket No. 108 at pp. 7-9.)  Regarding Colon's

pen drive and H drive, it is IAS policy that confidential information (including employees' salary and benefits) are not permitted in personal drives or pen drives. (Docket No. 70-10 at p. 75:1-11.)  Whether or not Colon was permitted to have a pen drive is therefore not a material fact in dispute, because the dispositive and undisputed fact is that she had confidential information on her personal drives. (Docket No. 70-8 at p. 62:11-25.)

Colon also argues that providing information about potential gender pay disparity to the SIF was protected conduct satisfying one of the three requirements necessary for a *prima facie* case. (Docket No. 108 at pp. 10-12.)  Puerto Rico Law 115, Title VII and the EPA are "largely symmetrical in scope," and can therefore be analyzed together. See Velez v. Janssen Ortho, LLC, 467 F.3d 802, 809 (1st Cir. 2006); Uphoff-Figueroa v. Alejandro, 597 F.3d 423, 433 (1st Cir. 2010) ("Employees must establish they engaged in activity protected under law 115 and then suffered discrimination at work.").  Colon's disclosure of Diaz's salary information to the SIF was in contravention of IAS policy, a fact Colon admitted. (Docket No. 70-2 at p. 182:12-18.)  Colon's chief objection to the R&R's findings regarding this incident focuses on the factual dispute over whether SIF investigator Perez asked for the information, or if Colon voluntarily faxed it to him. (Docket

No. 108 at p. 9.)  Colon raised this argument prior to the R&R, and the magistrate judge rejected it by focusing on the undisputed and material fact that Colon knew she had improperly disclosed confidential information.[5]  (Docket No. 70 at ¶¶ 70-71.)  Colon ignored instructions contained in the IAS employee manual (and also given to her personally) not to disclose any salary information without prior authorization.  Her actions were violations of IAS policies rather than protected conduct, and were sufficient to permit an administrative investigation of Colon.

### iv.  IAS's Actions were not a "Reprisal Course of Action"

Finally, Colon objects to the R&R's characterization of the "alleged adverse employment actions" as legitimate business decisions and discrete incidents rather than "part of a reprisal course of action taken against" Colon.  (Docket No. 108 at p. 11.) Colon also raised many of these objections before the magistrate judge, and the R&R properly ruled for the defendants.

First, each of IAS's actions highlighted by Colon were not adverse employment actions.  For example, as discussed above, the decision to cross-train Colon was a legitimate business

_____

[5] Colon's objections also included reference to P.R. Laws Ann. Tit. 11, §§ 20, 28 as evidence that "salary information must be provided to SIF."  (Docket No. 108 at p. 10.)  Both sections, however, use "employer" rather than "employee" when discussing a company's legal obligations.  In short, Colon is not authorized nor required to provide any information to SIF regarding compensation.

decision that had been done previously.  Moreover, Colon's
compensation and benefits were never negatively affected, and she
was one of many HR employees who were cross-trained.  A "temporary
rotation of responsibilities" does not qualify as "an adverse
employment action" sufficient to establish a *prima facie* case of
employer retaliation.  Morales-Vallellanes v. Potter, 605 F.3d 27,
38 (1st Cir. 2010); see also Ahern, 629 F.3d at 56 ("[T]he short-
term reassignments of which the plaintiffs complain cannot
plausibly be said to constitute materially adverse actions.").  Nor
was the decision to place Colon on paid administrative leave
considered a "disciplinary action" pursuant to IAS guidelines.
(Docket No. 70 at ¶¶ 81-82.)  After concluding the investigation,
Mercado and Avilez decided to issue a final corrective action to
Colon that would function as a final warning to her.  Id. at ¶ 89.
At no time did Mercado or Avilez consider suspending Colon without
pay or terminating her employment.  Id. at ¶ 91.  Because each of
these actions were not adverse individually, viewing them combined
makes no significant legal difference.  Finally, because Colon did
not object to the R&R's finding that her resignation was voluntary,
and that she failed to satisfy the objective "reasonable person"
test required for evaluating adverse employment action, the Court
accepts that portion of the R&R.  See Burlington N. & Santa Fe Ry.
Co., 548 U.S. at 57.

## V.   Conclusion

Colon's objections to the R&R do not highlight any disputed fact that is material to her case.  Not only has she failed to establish a *prima facie* case of retaliation, she has not carried her burden of proving that IAS's stated rationale for its business decisions was merely pretextual.  "Workplaces are rarely idyllic retreats," and Colon has not provided enough evidence to permit a reasonable jury to find in her favor on her claims under federal and state law.  See <u>Marrero v. Goya of Puerto Rico, Inc.</u>, 304 F.3d 7, 23 (1st Cir. 2002) (internal quotation omitted).  Because the Court's role is not to be a "vehicle for judicial review of business decisions," summary judgment for defendants is proper. <u>See</u> <u>Gray v. New England Tel. and Tel. Co.</u>, 792 F.2d 251, 255 (1st Cir. 1986).

For the reasons expressed above, the Court **ADOPTS** Magistrate Judge Velez-Rive's R&R and **GRANTS** the defendants' motion for summary judgment.  In accordance with this order and the order at docket number 43, this case is **DISMISSED, with prejudice**.  Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, June 21, 2012.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE